IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAY C. KEYS, <br> BOP Register No. 22458-017, <br><br> Petitioner, <br><br> V. <br><br> CHRISTOPHER RIVERS, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br> No. 3:22-cv-1497-B-BN |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Clay C. Keys, a federal inmate incarcerated but not convicted in this district, filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2241 concerning a prison disciplinary proceeding. *See* Dkt. No. 3.

United States District Judge Jane J. Boyle referred Keys's petition to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

As ordered, *see* Dkt. No. 4, the government responded, arguing that the habeas petition should be dismissed because Keys failed to exhaust his available administrative remedies and that, even if he had, the petition is meritless because Keys was not denied due process and sufficient evidence supports the findings of the Disciplinary Hearing Officer (the DHO), *see* Dkt. Nos. 6, 7.

Keys failed to reply, and the deadline by which to do so has expired, *see* Dkt. No. 4.

The undersigned enters these findings of fact, conclusions of law, and

recommendation that the Court should dismiss the habeas petition as unexhausted or, in the alternative, deny the petition.

## Applicable Background

The response sets out these facts, which Keys did not rebut through a reply:

> Petitioner is currently serving a 180-month sentence for Receipt and Distribution of Child Pornography, and Possession of Ammunition by a Convicted Felon. [Dkt. No. 7 at 3-45 (App.)] p. 10. Petitioner's current projected release date is July 6, 2026. *Id.*
>
> On August 5, 2014, at 3:37 p.m., BOP Officer D. Minguzzi observed Petitioner pulling at a locked cooler door, apparently to remove cookies which were stored there. App. p. 33, at § 11. Officer Minguzzi located cookies next to where Petitioner had been standing and noted damage to the cooler door upon which Petitioner had been caught pulling. *Id.* Petitioner apologized for breaking into the cooler and taking the cookies. *Id.*
>
> An incident report was completed and a written copy of it was provided to Petitioner the same evening. App. p. 33, at §§ 14-16. Petitioner was advised of his rights, after which he again admitted he had been caught stealing. App. p. 34, at §§ 23-24. On August 9, 2014, Petitioner was brought before a Unit Disciplinary Committee (UDC). App. p. 33, at §§ 17-21. Petitioner admitted to the conduct in the incident report. *Id.*, § 17. The UDC referred the incident report the DHO, for a hearing. *Id.*, § 19. Petitioner was served with "Notice of Discipline Hearing Before the DHO" and "Inmate Rights at Disciplinary Hearing" forms, which he signed. App. pp. 37; 39. Petitioner indicated that he did not wish to have a staff representative at the upcoming disciplinary hearing, and declined to request any witnesses. *Id.*
>
> A DHO held the hearing of this disciplinary matter on August 26, 2014. App. p. 41. Petitioner was present at the hearing. During his hearing, Petitioner did not request a staff representative, nor did he elect to call any witnesses, or present any documentary evidence. *Id.* Instead, Petitioner made the following statement, "I admit to stealing the cookies. I told Officer Minguzzi that when he asked me." *Id.*, § III, B.
>
> At the conclusion of the hearing, the DHO was convinced that Petitioner did commit the prohibited act of Stealing, code 219. App. p. 6, at ¶ 21. The DHO based her decision on the greater weight of the evidence – relying on the reporting staff member's eyewitness statement, the photos of the damaged cooler, and Petitioner's multiple admissions. App. p. 42, at § V. Petitioner was sanctioned with the

   disallowance of 27 days of good conduct time, and 30 days of visiting, telephone, email, and commissary privilege restrictions. *Id.*, §§ VI-VII.
   On September 15, 2014, at 10:48 a.m., the DHO personally delivered a copy of her report of the hearing for incident number 2613748 to Petitioner. App. p. 43, at § IX. Petitioner was advised that he had 20 calendar days to file an appeal of this disciplinary action using the Administrative Remedy Process, but he chose not to do so. *Id.*, Attachment 8, § VIII.

Dkt. No. 6 at 1-3.

## Legal Standards and Analysis

### I. The petition should be dismissed as unexhausted.

"A federal prisoner may not seek § 2241 relief in connection with the execution of his sentence unless he first exhausts the administrative remedies made available by the Bureau of Prisons." *Williams v. Willis*, 765 F. App'x 83, 83 (5th Cir. 2019) (per curiam) (citing *United States v. Dowling*, 962 F.2d 390 393 (5th Cir. 1992); *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017); 28 C.F.R. §§ 542.10-542.19)).

"Administrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels." *Wood v. Carr*, No. 4:20-cv-1365-P, 2021 WL 2207202, at *3 (N.D. Tex. June 1, 2021) (citing 28 C.F.R. § 542.15; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993)).

But "exhaustion of administrative remedies is not required where they are 'unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action.'" *Overshown v. Upton*, 466 F. App'x 361, 361 (5th Cir. 2012) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). "[E]xceptions to the exhaustion requirement apply only in 'extraordinary circumstances,' and [a petitioner] bears the burden of

demonstrating the futility of administrative review." *Fuller*, 11 F.3d at 62 (citations omitted).

The uncontested record evidence reflects that Keys failed to pursue further administrative remedies in 2014, beginning with an appeal to the Regional Director within 20 calendar days. *See* 28 C.F.R. § 542.15. But Keys appears to claim that he did not receive the DHO's decision in 2014 and that the decision was "re-issued" in 2021, which restarted his time to pursue administrative remedies. *See* Dkt. No. 3 at 5, 6, 10-12. The BOP rejected these assertions through a decision dated February 7, 2022. *See id.* at 10. Keys then failed to pursue an appeal of this subsequent decision.

So, even if the Court accepts that Keys's argument excepts him from the exhaustion requirement as to the 2014 DHO decision, he still failed to exhaust administrative remedies as to the 2022 decision. And, because the government raised this argument in its response, *see* Dkt. No. 6 at 6 n.2, Keys had an opportunity to rebut it, but he failed to do so by filing a reply brief. The Court should therefore dismiss his habeas petition as unexhausted.

**II.    In the alternative, the petition should be denied.**

"Not every punishment for prison misconduct implicates a protected liberty interest." *Jacques v. Bureau of Prisons*, 632 F. App'x 225, 225 (5th Cir. 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84, 485-87 (1995)). For example, neither "the temporary loss of commissary" nor the temporary loss of "visitation privileges" would "support a due process claim." *Id.* (citing *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)).

But the Court begins with the "assum[ption] ... that federal prisoners have a liberty interest in their good-time credits," also known as "good conduct time" (GCT). *Deen-Mitchell v. Young*, 490 F. App'x 650, 650-51 (5th Cir. 2012) (per curiam) (citing *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) ("BOP does not challenge the district court's conclusion that Henson had a statutorily-created liberty interest in his good time credit." (citation omitted))); *but cf. Pepper v. United States*, 562 U.S. 476, 502 n.14 (2011) ("An award of good time credit by the [BOP] does not affect the length of a court-imposed sentence.... Such credits may be revoked at any time before the date of a prisoner's release." (citations omitted)).

"When a prisoner has a liberty interest in good-time credits, revocation of such credits must comply with minimal procedural requirements." *Pruitt v. Martin*, 582 F. App'x 319, 320 (5th Cir. 2014) (per curiam) (quoting *Henson*, 213 F.3d at 898 (citing, in turn, *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445, 454 (1985)); internal quotation marks omitted).

These requirements – which "are flexible ... and must necessarily be balanced against legitimate penological interests," *Henson*, 213 F.3d at 898 (citing *Hill*, 472 U.S. at 556; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) – "include notice, an opportunity to be heard, and written findings in support of the action," *Deen-Mitchell*, 490 F. App'x at 651 (citing *Wolff*, 418 U.S. at 564-65); *accord Hunnicutt v. Stephens*, No. 3:14-cv-885-G-BN, 2014 WL 2619856, at *2 (N.D. Tex. June 12, 2014).

And "[f]ederal habeas review of the sufficiency of the evidence to support a disciplinary conviction is extremely limited. Due process requires only 'some evidence

to support the findings made in the disciplinary hearing.'" *Hunnicutt*, 2014 WL 2619856, at *2 (quoting *Hill*, 472 U.S. at 457; citing *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A Oct. 1981) (a court must determine whether "any evidence at all" supports disciplinary action taken by prison officials)); *see Pruitt*, 582 F. App'x at 320 ("[A] disciplinary proceeding comports with due process if ... there is 'some evidence' in the record to support the disciplinary conviction." (citing *Richards v. Dretke*, 394 F.3d 291, 294 (5th Cir. 2004))); *see, e.g.*, *Henson*, 213 F.3d at 898-99 ("Given that there was 'some evidence' supporting the punishment, and that there would still be 'some evidence' even if Henson obtained a contradictory result from a retest, Henson had no due process right to retest the pipe." (internal citation and footnote omitted)).

In sum, where a habeas petitioner challenges the sufficiency of the evidence "to support his disciplinary conviction, 'prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials.'" *Anaya v. Nicklin*, 788 F. App'x 964, 964 (5th Cir. 2020) (per curiam) (quoting *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994)).

The response to Keys's petition includes a declaration from the DHO [Dkt. Nos. 7], the attachments to which include the incident report and supporting documents, *see* Dkt. No. 7 at 35-37; the inmate rights form provided to Keys, which he signed, *see id.* at 41; the notice of hearing, also provided to Keys, which he also signed, *see id.* at 39; and the DHO report, reported as delivered to Keys, *see id.* at 41-43.

Through his petition, Keys does not dispute this evidence. *See* Dkt. No. 3. And, even where a habeas petitioner does, such challenges generally fail, as issues like a

DHO's credibility assessment or his overall consideration of the evidence are outside the limited scope of habeas review of a prison disciplinary conviction that implicates a protected liberty interest. *See, e.g.*, *Ester v. Jones*, 742 F. App'x 42, 43 (5th Cir. 2018) (per curiam) (Federal habeas courts "do not independently assess witness credibility or reweigh the evidence in determining whether there is some evidence to support a disciplinary conviction." (citing *Richards*, 394 F.3d at 294, and then concluding that, there, "[t]he incident report constitutes 'some evidence' to support the disciplinary conviction, and Ester did not establish a due process violation")).

Here too, the incident report, among other evidence attached to the DHO's declaration, "constitutes 'some evidence' to support the disciplinary conviction" and compels finding that Keys has "not establish[ed] a due process violation" and is not entitled to federal habeas relief. *Id.* at 43.

## Recommendation

The Court should dismiss the application for writ of habeas corpus under 28 U.S.C. § 2241 because Petitioner Clay C. Keys failed to exhaust administrative remedies or, in the alternative, deny the habeas petition.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 2, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE